**FILED**

09/23/2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**JUDGE HARJANI**

AO 106 (Rev. 04/10) Application for Search Warrant

AUSA Christopher V. Parente, (312) 886-2447

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The iCloud accounts Jeremiah_Harris@yahoo.com
(Subject Account 1) and jerryllc99@yahoo.com
(Subject Account 2), further described in Attachment
A

**UNDER SEAL**   **20 M 495**

Case Number:

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Edward A. Goodman, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of California, there is now concealed:

**See Attachment A, Part III**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, instrumentalities, and contraband.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2251, 2252 and 2252A | production, possession, receipt, and distribution of child pornography |

The application is based on these facts:

**See Attached Affidavit,**

Continued on the attached sheet.

_____
*Applicant's Signature*

EDWARD A. GOODMAN, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: September 23, 2020

_____
*Judge's signature*

City and State: Chicago, Illinois

SUNIL R. HARJANI U.S.Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT )
                                                )
NORTHERN DISTRICT OF ILLINOIS )

## **AFFIDAVIT**

I, Edward A. Goodman, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately June 2010. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal distribution, receipt, and possession of child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A. I have received training in the area of child pornography and child exploitation, and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in multiple forms of media, including computer media. I also have participated in the execution of multiple federal search warrants, many of which have involved child exploitation and/or child pornography offenses.

2.      This affidavit is made in support of an application for a warrant to search, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple, Inc., which provides electronic mail and data services, located at One Infinite Loop, Cupertino, California 95014. In particular, the search warrant is for account records associated with the iCloud account      Jeremiah_Harris@yahoo.com      (**Subject      Account      1**)      and

jerryllc99@yahoo.com (**Subject Account 2**) (collectively "the **Subject Accounts**") which are further described in the following paragraphs and in Attachment A-1. As set forth below, there is probable cause to believe that the Subject Account contains evidence and instrumentalities of violations of the illegal distribution, receipt, and possession of child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A (the "**Subject Offenses**").

3.    The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, fruits, and contraband relating to the **Subject Offenses** are located within the account records described in Paragraph 2 of this affidavit.

## DEFINITIONS

4.    I know from my training and experience as an FBI Special Agent that the following definitions apply to the activity discussed in this affidavit:

a.    *IP Address*: The Internet Protocol address (or simply "IP" address) is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (*e.g.*, 121.56.97.178). Every computer attached to the Internet must be

assigned an IP address so that Internet traffic to and from that computer may be properly directed from its source to its destination.

      b.    *Server*: A server is a computer that provides services to other computers. Examples include web servers which provide content to web browsers and e-mail servers which act as a post office to send and receive e-mail messages.

## FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

### Apple, Inc., and iCloud

5.    Based on my training and experience, I have learned the following information about Apple and iCloud:

      a.    Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

      b.    Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

          i.    Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

          ii.    iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange

instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

           iii.      iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

           iv.      iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

v.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

vi.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

vii.    Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

viii.   App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

c.      Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

d.      An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-

5

provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

    e. Apple captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

    f. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains

connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

g. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service,

including communications regarding a particular Apple device or service, and the repair history for a device.

        h.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

        i.    In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence

8

may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. The records and information described in Attachment A represent the type of data expected to be located in the **Subject Account** based on my experience and that of other federal agents.

j.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Additionally, even after a user deletes child pornography from his or her cell phone, the images may remain on the users icloud account.

k.     In addition, the user's account activity, logs, stored electronic communications, geolocation, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and

9

because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

l.      Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime, or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

m.      Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## I.  SUMMARY OF THE INVESTIGATION AND BASIS FOR SEARCH WARRANT

6.   Law enforcement was recently contacted by the parent (Individual A) of two 14 year old male children (Minors 1 and 2) regarding allegations that an individual named JERRY HARRIS[1] (HARRIS) had contacted Minor 1 and Minor 2 online and repeatedly solicited child pornography images and videos from Minors 1 and 2. Individual A discovered the child pornography images and videos on Minor 1's cell phone and confronted Minor 1 about the images.

7.   Minor 1 identified HARRIS as the individual who requested the images and videos, and Minor 1 provided Individual A with text messages and screenshots corroborating a relationship between Minor 1 and HARRIS. Minor 1 also reported one in-person encounter between Minor 1 and HARRIS where HARRIS solicited oral sex from Minor 1 in a bathroom at a cheerleading event both HARRIS and Minor 1 attended. Minor 1 further reported HARRIS' attempt to solicit him for an in-person sexual encounter when Minor 1 was at a cheer competition in Orlando, Florida that HARRIS also attended.  Minor 1 stated that HARRIS would occasionally contact him by FaceTime.

8.   Minor 2, who is Minor 1's twin brother, also reported multiple online solicitations from HARRIS for child pornography images or videos of Minor 2, but Minor 2 stated he never complied with the requests.

---

[1] JERRY HARRIS is a television personality and cheerleader.  He received national recognition after appearing in a Netflix docuseries named "Cheer." HARRIS is currently 21 years old.

9.     In a voluntary interview with law enforcement on September 14, 2020, HARRIS admitted to asking Minor 1 to take photographs and videos of Minor 1's penis and buttocks and to send the photos and videos to HARRIS through Snapchat, knowing that Minor 1 was 13 years old.[2] HARRIS further admitted to engaging in ongoing Snapchat conversations with Minor 1 beginning in December 2018 and continuing through March 2020, during which time HARRIS repeatedly asked Minor 1 to send him photographs and videos depicting Minor 1's penis and buttocks areas. HARRIS acknowledged to law enforcement that he in fact received such photos and videos from Minor 1 through the Snapchat application.   HARRIS admitted to engaging in this criminal conduct using FaceTime.  HARRIS also identified **Subject Account 1** as his iCloud account.  A review of HARRIS' cellphone identified **Subject Account 2** as his iCloud account.

### a.     Interview of Individual A[3]

10.     On September 2, 2020, Individual A, who is the mother of two twin boys who are both currently 14 years old, was interviewed by law enforcement at her place of employment in Texas. Individual A stated that both of her sons, Minor 1 and Minor

---

[2] Snapchat is messaging application developed by Snap Inc. which allows users to communicate by text message and exchange photographs and videos.  One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they are deleted.  The Snapchat application uses the internet to send and receive messages.

[3] Individual A has no criminal convictions and initially reported her findings to local law enforcement on July 10, 2020.  After hearing no response, Individual A eventually contacted the FBI on August 8, 2020.

2, are cheerleaders who are part of a team that travels across the United States participating in cheerleading competitions and camps.

11.     Individual A stated that in approximately February 2020 she accessed Minor 1's cell phone and reviewed its contents.[4] Individual A reviewed a text message purportedly from HARRIS to Minor 1 in which HARRIS stated he did not think he should be friends with Minor 1 on Snapchat anymore and that HARRIS was feeling guilty for something he had done in the past involving Minor 1.[5] Individual A reviewed the entire text string between HARRIS and Minor 1 and found messages from HARRIS to Minor 1 asking Minor 1 to meet HARRIS privately.[6] These messages were from May 2019 when Individual A stated Minor 1 was in Orlando, Florida, for a cheer competition called "the Summit."[7]

12.     Individual A stated she confronted Minor 1 about the text messages with HARRIS and Minor 1 stated that HARRIS had been communicating with him on Snapchat for over one year.  Minor 1 told Individual A that HARRIS constantly requested Minor 1 to send HARRIS photographs and videos.  Individual A asked

---

[4] Individual A explained that she periodically reviewed both Minor 1 and Minor 2's cell phones as part of her due diligence as a parent.

[5] A screenshot of this communication is depicted below in paragraph 32.

[6] A screenshot of this communication is depicted below in paragraph 27.

[7] The organizer of the Summit event confirmed that HARRIS attended the event and a review of publicly available information on an Instagram account linked to HARRIS corroborates that HARRIS attended this event. Individual A provided law enforcement with hotel and airline receipts demonstrating that Minor 1 was also at the Orlando, Florida event.

13

Minor 1 what type of photos and videos he sent to HARRIS and Minor 1 would not respond.

13.     Individual A accessed Minor 1's snapchat account on Minor 1's cell phone and reviewed the contents.  Individual A found nothing alarming in her initial review of Snapchat Account.  Individual A later did internet research of Snapchat and learned of a folder called "for my eyes only" (FMEO) which allows Snapchat users to keep certain messages hidden on their account.  Individual A again confronted Minor 1 and asked him to show her his FMEO folder on Snapchat.  Minor 1 accessed his FMEO folder on Snapchat and provided his cell phone to Individual A.

14.     Individual A reviewed files in Minor 1's FMEO folder on Snapchat and viewed an approximately minute long video of a black male sitting on a bed masturbating.  The face of the individual was not visible in the video.  Individual A asked Minor 1 who was depicted in the video and Minor 1 stated it was HARRIS. Individual A also located photographs of a black male's penis in Minor 1's FMEO folder.

15.     Individual A also located in Minor 1's FMEO folder on Snapchat approximately 12 to 15 photographs and videos of Minor 1 in which Minor 1 is naked and stretching, doing cheer poses, and/or showing his anus to the camera.  Individual A asked Minor 1 why all of these photos and videos were saved on his Snapchat account. Minor 1 stated HARRIS constantly requested that Minor 1 take these types of photos and videos for HARRIS and Minor 1 only wanted to do the things depicted

in the photos and videos one time so he saved them to resend to HARRIS on future occasions.

16.     Individual A stated she immediately instructed Minor 1 to delete all of the photographs and videos from the FEMO folder which Minor 1 did.[8]

17.     Individual A stated she did not contact law enforcement immediately upon finding the child pornography videos for multiple reasons.  Individual A stated she was familiar with HARRIS from the Netflix docuseries "Cheer" and knew him to be an inspirational person who had a troubled life and she did not want to ruin his life over a series of bad choices.  Individual A also knew that the local police chief was involved in the Netflix show and Individual A felt she could not contact him.  Eventually Individual A made the decision to contact law enforcement and report her findings.

18.     Individual A stated that in further discussions with Minor 1 about HARRIS, Minor 1 told Individual A about meeting HARRIS in person at a cheer camp that took place in Texas in February 2019.[9]  Minor 1 told Individual A that at the camp HARRIS entered a bathroom with Minor 1 and solicited oral sex from Minor 1.

---

[8] Law enforcement is forensically analyzing Minor 1's cell phone in an attempt to recover any deleted fragments of these photos or videos.

[9] The organizer of the Texas event confirmed that HARRIS attended the event. A review of HARRIS' publicly available posts on an Instagram account associated with HARRIS also corroborates that HARRIS did attend this camp in Texas on February 9, 2019. As depicted below in Paragraph 28, Individual A also provided law enforcement with a photograph of Minor 1 and HARRIS taken at this event.

Minor 1 refused and eventually escaped the bathroom telling HARRIS he was going to be late for warmups and had to go join his team.

19.    Individual A provided law enforcement with multiple screenshots of communications between HARRIS and Minors 1 and 2 that she obtained from Minor 1 and Minor 2's cell phones.  These text exchanges and screenshots are discussed in detail below.

**C.    Interview of Minor 1[10]**

20.    On August 28, 2020, Minor 1 was forensically interviewed by a trained child forensic interviewer in Texas.[11]  Minor 1 stated he was initially contacted by HARRIS on Instagram messenger in 2018. Minor 1 informed HARRIS that he was 13 years old. HARRIS requested Minor 1 to connect to him on Snapchat for further conversations which Minor 1 did.  Minor 1 stated he had multiple Snapchat conversations with HARRIS in which HARRIS constantly requested Minor 1 to send HARRIS naked photos and videos of Minor 1 to HARRIS.  Minor 1 identified his Snapchat Account as the account HARRIS used to solicit child pornography from him. Minor 2 further identified his Snapchat Account as the account Minor 2 used to communicate with HARRIS and which he sent HARRIS child pornography.

---

[10] Minor 1 is a 14 year old male who resides in Texas.  Minor 1 was previously victimized by an adult male in Texas and there is a pending criminal case based on this sexual assault. Minor 1 has no criminal convictions.

[11] The interview was electronically recorded and I have reviewed the recording.

21.     Minor 1 stated that between late 2018 through March 2020 he had provided HARRIS with multiple nude photographs and videos of Minor 1 through Snapchat. Minor 1 also recalled having FaceTime calls with HARRIS in which HARRIS asked Minor 1 to "bend over more" and show me "your butthole."[12] Minor 1 who has met HARRIS in person at cheer events recognized HARRIS on FaceTime calls as the same HARRIS he had met at prior cheer competitions.[13]

22.     During his forensic interview, Minor 1 referenced a specific request from HARRIS in response to a photograph of Minor 1 that Minor 1 posted of himself doing a cheerleading maneuver called "the needle."[14]   Minor 1 stated after posting this photograph HARRIS contacted him by Snapchat using Snapchat and asked him, "Do it naked and take a video and show me ☺"[15]

23.     Minor 1 further recounted an in-person encounter he had with HARRIS at a cheer competition in February 2019 in Texas.  Minor 1 stated that at the event HARRIS followed him into a bathroom and solicited oral sex from Minor 1.  Minor 1 said he refused and that eventually he left the bathroom and went back to join his team.

---

[12] Based on my training and experience I know that Apple maintains FaceTime call invitation logs for a certain period of time.

[13]  A photograph of Minor 1 and an individual who resembles HARRIS is depicted below in Paragraph 28. Minor 1 stated that on some FaceTime calls HARRIS would show his face and on others he would not show his face but all the calls came from the same FaceTime contact.

[14]  Individual A provided law enforcement with a photo of Minor 1 performing this move.  The photograph depicts Minor 1 standing on one leg and raising the other leg straight up - skyward - behind his back. A copy of this photo is depicted below in paragraph 30.

[15] A photograph of this screenshot is depicted below in paragraph 30.

24.    Minor 1 stated that in May 2019, at the Orlando event, HARRIS again attempted to solicit Minor 1 for a sexual encounter through a text communication.[16] Minor 1 again refused.

### D.    Interview of Minor 2[17]

25.    On August 28, 2020, Minor 2 was forensically interviewed by a trained child forensic interviewer in Texas.[18]    During the interview, Minor 2 stated that HARRIS was "touchy" and did "odd things" to him and his brother, Minor 1.  Minor 2 stated that HARRIS contacted Minor 2 on Snapchat and had asked him to send him "nude pictures" of himself and photos "naked with your butt."  Minor 2 stated he always said no to HARRIS' requests.  Minor 2 stated HARRIS would get "pushy" and make Minor 2 feel guilty for not sending HARRIS nude photographs. Minor 2 recalled one specific communication from HARRIS in which HARRIS asked Minor 2 if he wanted to meet in person for a sexual encounter.[19]  Minor 2 explained that he interpreted HARRIS' use of four stars to mean the word "fuck."  Minor 2 identified his Snapchat account as the account HARRIS used to contact him soliciting child pornography.

---

[16] A photograph of this text communication between HARRIS and Minor 1 appears below in Paragraph 27.

[17] Minor 2 is a 14 year old male who resides in Texas.  Minor 2 was previously victimized by an adult male in Texas and there is a pending criminal case based on this sexual assault. This is the same incident that Minor 1 was a victim of which is noted above.  Minor 2 has no criminal convictions.

[18] The interview was electronically recorded and I have reviewed the entire interview.

[19] A photograph of the screenshot of this communication is depicted below in paragraph 29.

### E.     Forensic Review of Minor 1 and Minor 2's Cellphones

26.     On August 26, 2020, Minor 1 and Minor 2's cellphones were provided to law enforcement.  A forensic copy of the phones were made and are being analyzed by law enforcement. A saved contact in both Minor 1 and Minor 2's cell phone was the name "jerry harris."  The telephone number associated with the "jerry harris" in both Minor 1 and Minor 2's phones was xxx-xxx-3709.  Law enforcement has been able to associate this xxx-xxx-3709 number as belonging to HARRIS by speaking to counsel for an event company who organized the Florida and Texas cheer events described above and who reviewed their records and confirmed that in 2019 HARRIS applied for a position with their company and used the xxx-xxx-3709 number as his contact number.

### F.     Text Messages Between HARRIS and Minor 1 and Minor 2.

27.     Individual A provided law enforcement with screenshots of multiple text message communications she located on Minor 1 and Minor 2's cell phones.[20]  As discussed above, Minor 1 stated that HARRIS reached out to him for purposes of a sexual encounter while Minor 1 attended a cheer competition in Orlando, Florida, in May 2019.  Individual A provided two text messages recovered from Minor 1's cell phone that corroborate this allegation.  As depicted below, HARRIS, who was 20 years old at the time, reached out to Minor 1, who was 13 years old at the time and stated,

---

[20] Law enforcement continues to forensically search Minor 1 and Minor 2's cell phone.  Law enforcement has located some of the texts provided by Individual A in the original format on Minor 1's cell phone.

"I found a place for us to do stuff it's actually pretty good haha."  Minor 1 stated he interpreted this to mean HARRIS had found a location for them to engage in a sex act together.



28.     As noted above in Paragraph 23, Minor 1 described an incident that occurred with HARRIS at a cheer competition in Texas on February 9, 2019, in which Minor 1 stated HARRIS followed Minor 1 into a bathroom and solicited oral sex from Minor 1.  Individual A provided law enforcement with a photograph depicting Minor 1 with HARRIS at that Texas event.[21]  The photo is depicted below:

---

[21] For privacy reasons I have redacted Minor 1's face.  I have viewed photographs and a video of Minor 1 and the individual in the photograph appears to be Minor 1.



29.     As noted above in Paragraph 25, Minor 2 described a communication he received from HARRIS in which he stated HARRIS solicited him for a sexual encounter.  Individual A provided a photo of this communication to law enforcement and it appears below. As noted above, Minor 2 stated HARRIS sent him this message on Snapchat and Minor 2 stated he interpreted this message to be HARRIS asking Minor 2 if he would be willing to engage in a sex act with HARRIS.  Specifically, Minor 2 interpreted the four stars at the end of the message to mean "fuck."



30.     In another screenshot photo provided by Individual A to law enforcement it appears to show HARRIS asking Minor 1 to send him a photo/video of Minor 1 doing a cheerleading position known as "the needle" naked.  The first photo below is Minor 1's public post of Minor 1 doing the needle.[22]  The second photo below is the screenshot provided to law enforcement by Individual A in which a Snapchat user with the name "Jerry Harris" asked Minor 1 to "do it naked take a video and show me" followed by an emoji.

---

[22] For privacy reasons I have redacted Minor 1's face.  I have viewed photographs and a video of Minor 1 and the individual in the photograph appears to be Minor 1.





31.     In another screenshot provided by Individual A to law enforcement the screenshot depicts a series of images of what appears to include nude young boys along with a photograph of an individual who resembles HARRIS in a separate photograph.  Minor 1 identified this screenshot as a view of a portion of the recent photographs and videos shared between Minor 1 and HARRIS on Snapchat.[23]  Minor 1 placed virtual stickers over some of the images for privacy reasons.  Included in this image is a screenshot of a video which appears to be of HARRIS.  Law enforcement obtained a copy of the actual HARRIS video and based on my familiarity with HARRIS, it does appear to be an authentic video created by HARRIS.

---

[23] I am familiar with the Snapchat program and based on my experience there is an option for a Snapchat user to view all image and video files recently shared between two Snapchat users. This image appears to document the images and videos shared between Minor 1's account and the account believed to belong to HARRIS.



32. In another two screenshots provided by Individual A to law enforcement the images appear to document a text communication, not on Snapchat, between Minor 1 and the "jerry harris" contact in Minor 1's cell phone.[24] The exchange is dated February 7 and Minor 1 stated the exchange occurred this year. In the exchange, Minor 1 asked HARRIS why HARRIS blocked Minor 1 on Snapchat. HARRIS told Minor 1, "I don't think we should be friends on Snap." When Minor 1 asked why, HARRIS responded, "I'm sorry for what I've done in the past. I don't think it's a good idea we be friends on Snap." Minor 1 explained that he interpreted HARRIS saying "I'm sorry for what I've done in the past" to mean he was sorry for having Minor 1 send him naked images and videos on Snapchat. HARRIS, who was 21 years old at the time, concluded the text telling Minor 1, who was 14 years old at the time, "you are so sweet. You didn't have to say this. But I love you too! Have a good night sleep ♥." The exchange concluded at 12:35a.m.

---

[24] As noted above, the telephone number for the Harris contact in Minor 1's cell phone, xxx-xxx-3709, has been identified through the records of a company HARRIS applied for work at and was the number HARRIS used as his contact number with the company.





### g. Search of Defendant's Residence and Recovery of HARRIS' I-Phone

33. On September 14, 2020, law enforcement executed a search warrant at HARRIS' residence in Naperville, Illinois. As part of that search law enforcement recovered an apple iPhone which is being searched by law enforcement and is linked to **Subject Account 2** as the apple id and iCloud account for the phone. Law enforcement also recovered other Apple computers during the search.

### h. Interview of Harris

31. On September 14, 2020, law enforcement interviewed HARRIS as part of a consensual interview. During the interview, HARRIS made the following material admissions:

- HARRIS admitted to sending a message to Minor 1 in which Minor 1 stated he was 13 years old, and HARRIS admitted to immediately asking Minor 1 to send him photographs of his "booty."

- HARRIS admitted to engaging in continuous Snapchat conversations with Minor 1 between December 2018 and March 2020 in which HARRIS repeatedly asked Minor 1 to send HARRIS naked photographs of Minor 1, including photographs of Minor 1's penis and buttocks, which Minor 1 sent to HARRIS over the Snapchat application. HARRIS admitted to using an older phone to engage in these communications, which I believe to be an iPhone.

- HARRIS stated he received images and/or videos from Minor 1 in response to his requests at least approximately once a month throughout the duration of their Snapchat discussion.

- HARRIS admitted to sending Minor 1 photographs of HARRIS' penis over the Snapchat application.

- HARRIS admitted he engaged in the above-described Snapchat conversations with Minor 1 from his residence in Illinois, as well as in Florida, Texas, and Kentucky.

34

- HARRIS admitted to attempting to entice Minor 1 to perform oral sex on HARRIS in a bathroom at a Texas cheerleading event.

- HARRIS admitted to texting Minor 1 while HARRIS and Minor 1 were at a cheerleading event in Florida attempting to entice Minor 1 to meet HARRIS at a secluded bathroom where HARRIS intended to engage in oral sex with Minor 1.

- HARRIS admitted sending Minor 2 the text message depicted above in Paragraph 29 and the intent of the message was inquiring if Minor 2 was interested in engaging in sexual acts with HARRIS. More specifically, HARRIS admitted he used the four **** symbols to mean the word "fuck."

- HARRIS admitted to soliciting and receiving child pornography on Snapchat from at least between 10 to 15 other individuals he knew were minors.

- HARRIS admitted to engaging in anal and oral sex with a 15 year old minor (Minor 3) at a cheer event in 2019.[25]

- HARRIS identified the **Subject Account 1** as his Apple id account for his cell phone.

### i. Interview of Minors 4 and 5.

34. On September 15, 2020, law enforcement interviewed two minor individuals (Minors 4 and 5) who contacted law enforcement regarding HARRIS. Minor 4 stated he met HARRIS at a party during the Summer of 2020. Minor 4 stated HARRIS asked him how old he was and Minor 4 stated he was 17. Minor 4 stated

---

[25] HARRIS provided law enforcement with the location of the event, as well as the name and age of Minor 3. To protect the identity of Minor 3, I am not listing that information here. HARRIS further admitted he started talking to Minor 3 on Snapchat when Minor 3 was just 13 years old. HARRIS stated that he asked Minor 3 to send him child pornography images on Snapchat, which Minor 3 did on multiple occasions. HARRIS stated that immediately after the in-person sexual encounter with Minor 3 all communications ceased between HARRIS and Minor 3.

HARRIS later contacted him on Snapchat and asked Minor 4 for photographs of his buttocks. Minor 4 initially told HARRIS no and HARRIS blocked Minor 4 on Snapchat. Minor 4 stated that two weeks later HARRIS again contacted Minor 4 on Snapchat and asked him for naked photographs of Minor 4.

35. Minor 4 described HARRIS as relentless and asking for naked photos of Minor 4 for three straight hours. Minor 4 stated that HARRIS later offered Minor 4 money for naked photographs of Minor 4. Eventually Minor 4 agreed and HARRIS sent Minor 4 $100 through an electronic payment application as a sign of good faith.[26] HARRIS gave Minor 4 specific instructions about what type of photographs he wanted from Minor 4 stating he wanted to see "butt hole."

36. Minor 4 told Minor 5, who was also 17 years old at the time, about what was happening with HARRIS, and Minor 5 agreed to take photographs of himself and told Minor 4 he could use those photographs to send to HARRIS. Minor 5 sent the naked photographs to Minor 4 who sent them to HARRIS over the Snapchat application.[27]

37. During one of the conversations between Minor 4 and HARRIS which took place over a Snapchat video call, Minor 4 stated HARRIS masturbated on the call while giving Minor 4 instructions about what to do. For example, at one point

---

[26] Minor 4 provided law enforcement with multiple screenshots of electronic payment transfers from an account named "Jeremiah Harris" to Minor 4.

[27] In his interview with law enforcement, HARRIS admitted to having child pornography images of Minor 4 on his cell phone.

during the Snapchat call, Minor 4 stated that HARRIS instructed him to "spread his butt cheeks" and "show his butthole" for the camera.[28]  Minor 4 complied with this request and performed these actions during the video.  HARRIS paid Minor 4 $500 for this video call.

38.    During another Snapchat conversation between Minor 4 and HARRIS, HARRIS asked Minor 4 to send HARRIS photographs of Minor 4's penis.  HARRIS requested photographs of Minor 4's penis stating he wanted two "hard" photos and one "soft" photo of the penis.  Minor 4 obtained these photographs from Minor 5 and sent them to HARRIS.

39.    HARRIS continued to contact Minor 4 throughout the Summer of 2020 and paid Minor 4 a total of approximately between $2,000 and $3,000.  Minor 4 last spoke to HARRIS on August 22, 2020, when HARRIS sent Minor 4 $500 to end the relationship and block HARRIS on Snapchat.

40.    Law enforcement has recovered some of the images and videos of Minor 4 and Minor 5 on HARRIS' cell phone.

41.    In light of all of the above, there is probable cause to believe that evidence, instrumentalities, fruits, and contraband relating to the Subject Offenses, including communications with known and unknown victims, will be found in the **Subject Accounts**.

---

[28] Law enforcement recovered a video from HARRIS' cell phone of what appears to be Minor 4 performing the actions Minor 4 described during this video encounter.

## II. BACKGROUND INFORMATION ON COMPUTERS AND SOCIAL MEDIA ACCOUNTS, CHILD PORNOGRAPHY AND INDIVIDUALS INVOLVED IN CHILD PORNOGRAPHY OFFENSES

42. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know the following:

a. Computers, smartphones, tablet computers, computer technology, electronic storage media devices and the Internet are critical components in the production, distribution, and collection of child pornography.

b. A child pornography image or video taken with a smartphone or other digital device can oftentimes be transferred directly to others via the Internet or to a computer by a variety of means. The Internet allows smartphones and other digital devices to connect to other computers, Smartphones, tablet computers and digital devices. Electronic contact can be made to millions of computers or devices around the world. The Internet allows users, while still maintaining anonymity, to locate (i) other individuals with similar interests in child pornography; (ii) websites that offer images of child pornography; and/or (iii) chat groups or bulletin boards in which child pornography is traded. Files, logs, and records relating to chat groups and other online means by which child pornography is traded via the Internet can contain the child pornography that was traded and information regarding the users who traded it and the date and time that it occurred.

c. Child pornography collectors can use standard Internet connections, such as those provided by ISPs such as Comcast and Verizon, at

38

residences or at businesses or other locations that provide free Internet access (e.g. restaurants, hotels), to communicate with each other and to distribute child pornography. Individuals using smartphones can use their mobile service, such as Sprint or Verizon, to connect to the Internet while away from their residences or other places that provide "Wi-Fi" or other Internet access, or in lieu of connecting to Internet service at their residences or other public places as an attempt to remain further anonymous.

d. Child pornography collectors may use online resources to retrieve, store and trade child pornography, including services offered by Internet portals such as Google and Yahoo! or online "cloud" storage providers. Such online services allow a user to set up an account with a remote computing service that provides e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage or "cloud" account from any computer or device with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer or other electronic devices.

e. Traces of the path of an electronic communication may be automatically stored in many places, such as email folders and/or a message folder associated with a social media account.

f. The majority of individuals who produce, possess, transport, receive, and/or distribute child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collections

39

of illicit materials from discovery, theft, and/or damage. These individuals almost always maintain their collections in the privacy and security of their homes or other secure locations, online or otherwise.

## III. SEARCH PROCEDURE

43. In order to facilitate seizure by law enforcement of the records and information described in Attachment A-1, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Apple to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

44. The search warrant will be presented to Apple personnel who will be directed to the information described in Section II of Attachment A-1.

45. In order to minimize any disruption of computer service to innocent third parties, Apple employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II of Attachment A-1, including an exact duplicate of all information described in Section II of Attachment A-1.

46. Apple employees will provide the exact duplicate in electronic form of the information described in Section II of Attachment A-1 and all information stored in those accounts and files to the agent who serves this search warrant.

47. Following the protocol set out in the Addendum to Attachment A-1, law enforcement personnel will thereafter review all information and records received

40

from Apple employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A-1.

## IV. CONCLUSION

48.     Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of the **Subject Offense** will be found in the **Subject Accounts**. By this affidavit and application, I request that the Court issue a search warrant directed to Apple allowing agents to seize the electronic evidence and other information stored on the Apple servers following the search procedure described in Attachment A-1, as well as the Addendum.

FURTHER AFFIANT SAYETH NOT.

Edward A. Goodman
Special Agent
Federal Bureau of Investigation

Subscribed and sworn
telephonically this 23rd day of September, 2020

SUNIL R. HARJANI
Magistrate Judge
United States District Court
Northern District of Illinois

41

## ATTACHMENT A-1

### I.    Search Procedure

a.    The search warrant will be presented to Apple personnel, who will be directed to isolate those accounts and files described in Section II below.

b.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

c.    Apple employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant.

d.    Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

### II.    Files and Accounts to be Copied by Apple Employees

a.    All e-mail, including attachments thereto, stored and presently contained in, or on behalf of, the iCloud email account addresses:

**Jeremiah_Harris@yahoo.com (Subject Account 1)**

**jerryllc99@yahoo.com (Subject Account 2)**

which are stored at premises owned, maintained, controlled, or operated by Apple, Inc,  One Infinite Loop, Cupertino, California 95014.

b.    All electronic files stored online via iCloud, stored and presently contained in, or on behalf of the AppleID account associated with the iCloud email account address described above in Section II(a).

0

c.     All stored Apple device location data including but not limited to GPS coordinates, stored online via iCloud, stored and presently contained in, or on behalf of the AppleID account associated with the iCloud email account addresses described above in Section II(a).

d.     All transactional information of all activity of the iCloud email account addresses described in Section II(a), including log files, dates, times, methods of connecting, ports, dial-ups, if applicable.

e.     All business records and subscriber information, in any form kept, pertaining to the AppleID account associated with the iCloud email account addresses described above in Section II(a), including application, subscriber, full name, all screen names associated with the subscriber and/or account, all account names associated with the subscriber, methods of payment, telephone numbers, addresses, and detailed billing records.

f.     All account contents previously preserved by Apple, including all e-mail, including attachments thereto, and stored electronic files for the AppleID account associated with the iCloud email account addresses described above in Section II(a).

g.     Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## III.   Information to be Seized by Law Enforcement Personnel

a.     All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 2252 and 2252A, as follows:

1.     Items pertaining to the possession, receipt, or transportation of child pornography, as defined in 18 U.S.C. § 2256(8), or sexual exploitation of children.

2.     Items concerning minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

3.     Items containing names, addresses, or other contact

information of individuals who may have been in contact with HARRIS concerning the possession, receipt, or transportation of child pornography, as defined in 18 U.S.C. § 2256(8).

      4.    Items related to the identities and contact information of participants in or witnesses to the Subject Offenses.

      5.    Items that show access to or use of Instagram, PayPal, CashApp, and Venmo.

      6.    Items related to the physical location of HARRIS during the time of any communications with minors regarding the production of child pornography or his attempts to engage in illicit sexual conduct with minors.

      7.    Complete history of HARRIS' FaceTime call log.

    b.    All of the non-content records described in Section II.

## ADDENDUM TO ATTACHMENT A-1

With respect to the search of any information and records received from the free web-based electronic mail service provider, law enforcement personnel will locate the information to be seized pursuant to Section III of Attachment A-1 according to the following protocol.

The search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.     searching for and attempting to recover any hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein.

b.     surveying various file directories and the electronic mail, including attachments thereto to determine whether they include data falling within the list of items to be seized as set forth herein.

c.     opening or reading portions of electronic files including but not limited to electronic mail, and attachments thereto, in order to determine whether their contents fall within the items to be seized as set forth herein, and/or

d.     performing key word searches through all electronic files including but not limited to electronic mail and attachments thereto, to determine whether occurrences of language contained in such electronic files, exist that are likely to appear in the information to be seized described in Section III of Attachment A-1.

Law enforcement personnel are not authorized to conduct additional searches on any information beyond the scope of the items to be seized by this warrant.